IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs July 16, 2003

## VERNON ELKINS, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Cannon County**
**No. F01-44     James K. Clayton, Jr., Judge**

_____

**No. M2002-00117-CCA-R3-PC - Filed August 15, 2003**

_____

The petitioner appeals the denial of post-conviction relief after his second degree murder conviction and argues his trial counsel (1) deprived him of his right to testify, and (2) failed to effectively represent him at trial. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Dale W. Peterson, Woodbury, Tennessee, for the appellant, Vernon Elkins, Jr.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; and William C. Whitesell, Jr., District Attorney General, for the appellee, State of Tennessee.

## OPINION

The facts presented at the petitioner's trial for first degree murder were as follows:

Prior to June 26, 1996, [the petitioner], his mother, grandmother, and aunt (the victim) peacefully shared a home in Cannon County. On that date, nothing unusual had occurred between [the petitioner] and the victim. They neither fought nor argued.

However, [the petitioner] entered the house, passed by his mother, grandmother, and aunt in the living room, and went to a nearby hall closet. In the closet, he retrieved his 30-30 lever-action deer rifle. From the hallway, [the petitioner] fired the rifle at least three times. One of the shots hit and killed his aunt.

[The petitioner's] mother ran away from the house as soon as she heard gunshots. His grandmother, splattered with the victim's blood, went to a neighbor's house to get help. Law enforcement arrived shortly thereafter and found [the petitioner]

standing in the front yard. Without any prompting, [the petitioner] stated, "I did it" and "I shot her." Officers immediately took [the petitioner] into custody without further incident.

The [petitioner] did not testify at trial and no defense proof was offered.

State v. Vernon Elkins, Jr., No. M1999-00107-CCA-R3-CD, 1999 Tenn. Crim. App. LEXIS 1231, at **1-2 (Tenn. Crim. App. Dec. 15, 1999, at Nashville), *perm. to app. denied* (Tenn. 2000).

The jury convicted the petitioner of second degree murder, and the trial court sentenced him to twenty-three years incarceration. His conviction was upheld on direct appeal. *Id.* The petitioner then sought post-conviction relief on the grounds that his trial attorney deprived him of his right to testify and failed to introduce exculpatory evidence.

## POST-CONVICTION HEARING

At the post-conviction hearing, the petitioner testified he and his trial counsel did not discuss trial preparations, although his attorney did advise him of the state's plea offers. The petitioner said his sole recollection of the day of the offense was standing in the yard. He stated he saw his grandmother, who did not have any blood on her, also standing in the yard talking to a preacher. According to the petitioner, he smoked a cigarette and waited for the preacher to leave, and he recalled nothing further until his arrest. The petitioner said that if he had testified at trial, he would have testified he did not commit the murder and had no reason to kill his aunt. The petitioner stated he told his attorney he wanted to testify at trial. At the post-conviction hearing, the petitioner said he would have been the only defense witness at trial because his mother was incompetent and his grandmother was deceased.

At trial, the local police chief testified the petitioner admitted shooting his aunt. The petitioner testified at post-conviction that he advised trial counsel he did not make such a statement. He stated he also told trial counsel that the murder weapon did not belong to him. He said he did not know where the gun came from, and his fingerprints were not on it. According to the petitioner, he asked trial counsel to investigate the origin of the gun.

The petitioner's trial counsel testified he did not recall the petitioner saying he wanted to testify. Trial counsel stated the petitioner repeatedly advised him that he had no recollection of the events in question. Trial counsel also recounted the petitioner's statements indicating he had no reason to shoot his family. The attorney said he and the petitioner discussed "the fact that since he claimed to have no recollection of the events of that day, there would basically be nothing he could say if he did testify." Trial counsel testified he did not feel the petitioner's testimony would have been beneficial at trial, and, therefore, "the decision was made that he wouldn't testify."

Trial counsel stated he, his investigator, and the petitioner discussed the facts and circumstances surrounding the crime and the results of their investigation. Trial counsel stated the petitioner never told him he had not made the incriminating statement to the police. Further, trial

counsel did not recall discussing ownership of the murder weapon. He said the petitioner indicated he exercised control over the guns in the home.

According to trial counsel, the facts of the petitioner's case did not lend themselves to a defense theory that someone other than the petitioner was responsible for the shooting. Although he tried to suggest to the jury that the shooting might have been accidental, the defense theory was that the petitioner was responsible but not to the degree charged in the indictment.

The post-conviction court denied the post-conviction relief petition after finding trial counsel provided effective representation.

## STANDARD OF REVIEW

The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Those findings of fact are afforded the weight of a jury verdict, and this court is bound by the findings unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## WRITTEN FINDINGS

We note the trial court did not reduce its findings and conclusions to writing as part of its order; instead, it pronounced them from the bench. The trial court is required to set forth written findings of fact and conclusions of law for each claim raised in a post-conviction relief petition. Tenn. Code Ann. § 40-30-211(b). Although this requirement is mandatory, reversal is not always warranted when a trial judge fails to include written findings of fact and conclusions of law in the order dismissing a post-conviction petition. State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). The legislative intent of the statute is to aid the appellate court's review of post-conviction proceedings. *Id*.; George v. State, 533 S.W.2d 322, 326 (Tenn. Crim. App. 1975). Where the court orally pronounces its findings from the bench, failure to state findings of fact and conclusions of law in the final order may be harmless error. State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987). For reasons hereinafter stated, we conclude the failure to file written findings was harmless.

## RIGHT TO TESTIFY

The petitioner's first contention is that the post-conviction court erred in not finding trial counsel deprived him of his right to testify. The petitioner testified at the post-conviction hearing that he advised his trial attorney that he wished to testify at trial. Trial counsel testified that the petitioner did not tell him that he wanted to testify. He further testified it was decided that the petitioner would not testify at trial because trial counsel did not feel it would be beneficial. It is

unclear from this testimony whether the petitioner made the decision that he would not testify at trial. The trial transcript is also silent as to whether it was the petitioner's decision not to testify. The post-conviction court failed to make a finding as to whether the petitioner decided not to testify. Instead, the court merely found it would not have been in the petitioner's best interest to testify, and that the petitioner failed to prove his trial counsel was ineffective for failing to present his testimony.

Both the state and federal constitutions grant the criminal accused the fundamental right to testify in his own defense. Momon v. State, 18 S.W.3d 152, 157 (Tenn. 1999). The decision to exercise or waive this right rests solely with the accused, not his attorney. *Id.* at 161. Therefore, when the petitioner raised the issue of whether his trial counsel deprived him of his right to testify, the proper question before the post-conviction court was whether the petitioner knowingly, voluntarily, and intelligently waived his right to testify rather than whether trial counsel was ineffective in failing to present the petitioner's testimony. A waiver of the right to testify may not be presumed from a silent record. *Id.* at 162.

We note the petitioner's trial was held prior to the Tennessee Supreme Court's publication of the Momon decision, which established specific procedures for ensuring that a defendant's waiver of his right to testify is made knowingly, voluntarily, and intelligently. *Id.* The procedures mandated in Momon apply only to cases tried after it was decided, and, therefore, there was no requirement that petitioner's trial counsel comply with them. *Id.* at 163. Yet, even prior to the publication of Momon, it was necessary for trial counsel to allow the petitioner to make his own decision as to whether or not to testify at trial. *Id.* It is unclear from the record, in the absence of a finding of fact, whether or not the petitioner personally waived his right to testify. Under most circumstances, we would be forced to remand this matter to the post-conviction court for further findings of fact regarding this issue. However, based on the record before us, we conclude that even if the petitioner were deprived of his right to testify, it was not prejudicial to the petitioner.

If a defendant is deprived of his right to testify by counsel's unilateral decision, the state bears the burden of establishing that denial of this constitutional right was harmless beyond a reasonable doubt. *Id.* at 169. In making this determination, a court should consider: "(1) the importance of the defendant's testimony to the defense case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the defendant on material points; [and] (4) the overall strength of the prosecution's case." *Id.* at 168.

In the instant case, the testimony of both the petitioner and trial counsel indicated that if the petitioner testified at trial, his testimony would have been that he had no recollection of the events in question, that he was not guilty of the crime, and that he had no reason to shoot his aunt. This evidence would not have been beneficial to his case in light of the strong proof offered by the state that he walked into his home, took a firearm from the closet, shot the victim while firing multiple shots, and admitted to the police chief that he shot the victim. The petitioner's mother testified at trial that she was present when the petitioner went to the closet and fired the shots. Further, there was proof that immediately after the shooting, the petitioner's grandmother, covered in the victim's blood, fled to a neighbor's home, where she reported the petitioner had shot the victim. We conclude the record, under these circumstances, established that if the petitioner were deprived of his right

to testify, the error was harmless beyond a reasonable doubt. Thus, the petitioner is not entitled to relief.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner also argues trial counsel was ineffective for (1) failing to explore the theory that the petitioner's mother shot the victim; (2) failing to question the state's witness as to whether there were fingerprints found on the murder weapon; and (3) conceding the petitioner shot the victim. We conclude the trial court did not err in finding the petitioner failed to establish that he did not receive the effective assistance of counsel.

Since the petitioner alleged ineffective assistance of counsel, it was petitioner's burden in the post-conviction court to prove the allegations by clear and convincing evidence in order to get relief. Tenn. Code Ann. § 40-30-210(f). We are required to affirm the post-conviction court's findings of fact unless the petitioner proves that the evidence preponderates against those findings. Burns, 6 S.W.3d at 461.

In order to prove ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance was deficient, and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The Tennessee Supreme Court has also applied this standard to the right to trial counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

## A.  Failure to Explore Theory that Petitioner's Mother Shot the Victim

The petitioner contends trial counsel was ineffective for failing to develop a defense theory that the petitioner's mother shot the victim. During the post-conviction hearing, the petitioner questioned trial counsel as to whether there was a plausible theory that the petitioner's mother had a motive to kill the victim. Trial counsel's response indicated such a theory was not plausible, and he explained that there was no evidence to dispute the state's proof that the petitioner shot the victim. He stated both the petitioner's grandmother and mother, the only two witnesses to the crime, had given statements to the effect that the petitioner walked into the house, went to the closet, brought out a gun, and began shooting.

The petitioner presented no proof that trial counsel had access to evidence that anyone other than the petitioner fired the weapon. There is no support for the petitioner's contention that trial counsel's performance was deficient for failing to present a defense theory not supported by the evidence.

## B.  Lack of Fingerprints on the Murder Weapon

The petitioner also contends trial counsel was ineffective for failing to elicit evidence during cross-examination of the state's ballistics expert that there were no fingerprints on the murder

weapon. However, the petitioner failed to present any proof at the post-conviction hearing that if trial counsel had pursued such a line of questioning, it would have resulted in testimony to the effect that no fingerprints were found on the weapon. *See* <u>Black v. State</u>, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The petitioner has failed to show prejudice.

## C. Trial Counsel's Concession that Petitioner Shot the Victim

Finally, the petitioner maintains his trial counsel was ineffective for conceding that the petitioner fired the fatal shot and seeking a lesser conviction. The petitioner may not second-guess a reasonably based trial strategy and may not criticize a sound, but unsuccessful, tactical decision made after adequate preparation for the case. <u>Adkins v. State</u>, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); <u>Cooper v. State</u>, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). We further note that trial counsel was successful in getting a conviction of second degree murder, a lesser offense of first degree murder. Further, trial counsel's testimony at the post-conviction hearing indicated there was no proof available to dispute the state's evidence that the petitioner was the shooter. The petitioner failed to establish trial counsel's trial strategy was the result of inadequate preparation or was unreasonable given the facts and circumstances of the petitioner's case. The evidence supported the post-conviction court's determination that trial counsel provided the petitioner with competent, effective representation.

## CONCLUSION

Although the post-conviction court erred in failing to make a determination as to whether the petitioner waived his right to testify at trial, we conclude that even if the petitioner were deprived of his right to testify, the error would have been harmless beyond a reasonable doubt under the circumstances of this case. Further, we conclude the petitioner failed to establish he was denied the effective assistance of counsel. Accordingly, we affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE